NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

GERALD D.W. NORTH,
*Plaintiff/Appellant*,

*v.*

UBIQUITY INC.,
*Defendant/Appellee*.

No. 1 CA-CV 19-0229
FILED 2-20-2020

Appeal from the Superior Court in Maricopa County
No.  CV2014-093859
The Honorable Joshua D. Rogers, Judge
The Honorable David J. Palmer, Judge

**AFFIRMED**

COUNSEL

Keith M. Knowlton, LLC, Tempe
By Keith M. Knowlton
*Counsel for Plaintiff/Appellant*

Andersen PLLC, Scottsdale
By Mark E. Andersen, Samantha Garber Stirling, Frederic G. Lemberg
*Counsel for Defendant/Appellee*

_____

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Randall M. Howe joined.

_____

**J O H N S E N**, Judge:

¶1        Plaintiff Gerald D.W. North appeals the superior court's entry of summary judgment in favor of defendant Ubiquity, Inc.  For the reasons set forth below, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        At issue is a contract executed in mid-December 2006 by which North agreed to provide services for Ubiquity.  The contract required Ubiquity to pay North a "Commencement Fee" as follows:

> For undertaking this engagement and for other good and valuable consideration, [Ubiquity] agrees to issue to North a common stock purchase warrant (the "Warrant") to purchase up to the greater of 250,000 shares of [Ubiquity's] Common Stock ("Common Stock") or one and one half percent (1.5%) of the largest aggregate number of shares of Common Stock issued and outstanding on any date within ninety (90) days of the date this Agreement is executed by [Ubiquity], at a price per share of $1.00. . . .  The Commencement Fee . . . constitutes payment for North's agreement to consult with [Ubiquity] and is a non-refundable, non-apportionable, and non-rateable retainer, not a prepayment of future services.  If [Ubiquity] decides to terminate this Agreement prior to the end of the term for any reason whatsoever, North will not be requested or required to return any part of the Commencement Fee.

The contract specified it was to be governed by California law and was to end after 18 months unless either party terminated it before then.

¶3        By letter dated February 28, 2007, Ubiquity terminated the contract.  On March 3, 2007, North responded by email.  In his email, North quoted from the Commencement Fee provision in the contract and stated: "The Company is in breach of its obligation to issue the Warrant.  Please advise when we may expect to receive it."  In a letter dated March 16, 2007,

responding to North's email, Ubiquity's lawyer wrote that the company would issue the warrant "provided that" North execute a mutual release. North did not execute the release, nor does he contend he offered or was willing to do so, and Ubiquity did not issue the warrant.

¶4 On June 13, 2014, North sued Ubiquity, alleging the company breached the contract by failing to issue the warrant and also was liable for "promissory fraud." The complaint sought damages and specific performance. In due course the parties filed cross-motions for summary judgment. The superior court ruled North's claims for breach of contract and specific performance were time-barred and entered judgment in favor of Ubiquity on those claims pursuant to Arizona Rule of Civil Procedure 54(b). North timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2020) and -2101(A)(1) (2020).[1]

## DISCUSSION

¶5 "We review *de novo* the grant of a motion for summary judgment." *Kopacz v. Banner Health*, 245 Ariz. 97, 99, ¶ 8 (App. 2018). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Id.* at 99-100, ¶ 8 (quoting Ariz. R. Civ. P. 56(a)). In general, an Arizona court will recognize a contractual agreement to be bound by another state's law. *See Cardon v. Cotton Lane Holdings*, 173 Ariz. 203, 207 (1992); Restatement (Second) of Conflict of Laws § 187 (1971). Under A.R.S. § 12-548(B) (2020), however, "if there is a conflict between another jurisdiction and this state relating to the statute of limitations for a debt action," the Arizona provision will apply.

¶6 The superior court concluded after considerable review of the authorities that, pursuant to § 12-548(A) and (B), the Arizona six-year limitations period applied to North's contract claim. Assuming, without deciding, that the six-year Arizona limitations period applies rather than the California four-year limitation period, Cal. Civ. Proc. Code § 337 (West 2020), we agree with the superior court that North's contract claim was barred by limitations.

¶7 Limitations begins to run on a contract claim when the claim accrues. *Angeles Chem. Co. v. Spencer & Jones*, 51 Cal. Rptr. 2d 594, 597 (App.

---

[1] Absent material revision after the relevant date, we cite the current version of a statute or rule.

1996); *see also* A.R.S. § 12-548(A); *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 588 (1995).

¶8　　　　As the superior court noted, the contract did not specify a date by which Ubiquity was obligated to issue the warrant.  The court continued:

> "Where no time is specified within which a promise must be performed, a reasonable time is implied." *Zancanaro v. Cross*, 85 Ariz. 394, 398, 339 P.2d 746, 749 (1959); *see also* Cal. Civ. Code § 1657 (explaining that "[i]f no time is specified for the performance of an act required to be performed, a reasonable time is allowed").  As it pertains to the statute of limitations, "where no time is fixed for performance under a contract, the promisor must perform within a reasonable time, and the statute of limitations begins to run at the expiration of such time.["]  54 C.J.S. Limitations of Actions § 191.

¶9　　　　Although the date a claim accrues sometimes may present an issue of fact, we agree with the superior court that North offered no evidence on summary judgment that "would plausibly suggest a reasonable time for issuance of the Warrant" within the six-year limitations period.  North does not dispute that the contract was terminated as of March 13, 2007, and he plainly understood that the company was obligated to issue him the warrant at that time.  That is the significance of the email he sent on March 3, 2007, just after receiving notice of the termination, in which he declared the company was "in breach of its obligation to issue the Warrant."  When Ubiquity did not issue the warrant but instead conditioned the warrant on North's execution of a release, North knew all he needed to know about the company's intentions.

¶10　　　　North argues that under applicable California law, a cause of action for breach of contract does not accrue until the plaintiff incurs damage as a result of the breach.  *See, e.g.*, *Walker v. Pac. Indem. Co.*, 6 Cal. Rptr. 924, 925 (App. 1960).  Applying that rule here, he contends his claim did not accrue before Ubiquity's shares began to be publicly traded in 2013, because before that, any warrant the company would have given him would have been worthless.

¶11　　　　North relies primarily on *Walker*, a case against an insurance broker that negligently sold a $15,000 policy to a buyer who had asked for a $50,000 policy.  *Id.* at 924-25.  Once the policy was in force, a jury rendered a $100,000 verdict on a covered claim.  *Id.* at 925.  The California Court of Appeal held the insured's negligence claim against the broker did not

accrue when the broker procured the wrong policy, but instead accrued when the excess verdict was rendered. *Id.* Before the verdict, the court observed, "it is difficult to conceive what action" the insured could have filed against the broker because, until then, the insured had suffered no injury. *Id.*

¶12 But North cites no California cases outside of the insurance-coverage context for his argument that he could not have stated a valid claim against Ubiquity when it refused his demand for the warrant in 2007. North's argument that the warrant had no value at that time is simply incorrect: The warrant Ubiquity had promised him would have granted him the power to purchase Ubiquity stock at a fixed price in the future, and the fact that North negotiated for the warrant as his "Commencement Fee" proves that it had some value to him at the time. North's real argument is that it would have been difficult to place a dollar value on the warrant before Ubiquity stock began trading. But it does not matter that no one could know in 2007 precisely what the warrant might ultimately be worth. *See Jordache Enters., Inc. v. Brobeck, Phleger & Harrison*, 958 P.2d 1062, 1066 (Cal. 1998) ("The loss or diminution of a right or remedy constitutes injury or damage. Neither uncertainty of amount nor difficulty of proof renders that injury speculative or inchoate." (citation omitted)). As with a contract to convey a lottery ticket or a painting by a novice artist, the value of the "Commencement Fee" lay in the possibility that it would someday be worth a considerable sum. That the value could not be known at the time of the conveyance is beside the point. Moreover, although it would have been difficult to place a dollar value on the warrant in 2007, North could have sued then for specific performance to compel the company to issue the warrant.

¶13 North cites no authority for his contention that one may wait any number of years after a contract breach to sue under circumstances such as these. Indeed, California case authority is to the contrary. In *Davies v. Krasna*, 535 P.2d 1161 (Cal. 1975), after a writer disclosed his story to the defendant in confidence, the defendant shared the story with others and then, seven years later, turned the "core" of the story into a successful Broadway production. *Id.* at 1162, 1164. The writer learned well within the limitations period that the defendant had shared his story with others, but waited to sue until after the defendant successfully exploited the confidence. *Id.* at 1162-63. The California Supreme Court held the writer's claim was barred by limitations, rejecting the argument that the claim did not accrue until the defendant exploited the confidence. *Id.* at 1163-64, 1169-70. "Under present authority, neither uncertainty as to the amount of damages nor difficulty in proving damages tolls the period of limitations."

*Id.* at 1169. The court distinguished *Walker* by noting that the writer could have sued to enjoin additional disclosures as soon as he learned within the limitations period that the defendant had first disclosed his story to others. *Id.* at 1168-69. Here, North had the same option to sue for specific performance to compel Ubiquity to issue him the warrant, but he did not do so.

## CONCLUSION

¶14        For the reasons stated above, we affirm the summary judgment in favor of Ubiquity. Citing A.R.S. § 12-341.01 (2020), Ubiquity asks for its attorney's fees on appeal. North argues we should deny the company's request because the parties agreed that their contract would be subject to California law and that state has no similar fees statute. The superior court denied Ubiquity's request for fees for that reason, a ruling from which Ubiquity did not cross-appeal. Nor does Ubiquity offer any analysis of that issue in support of its request. Accordingly, we deny the request. Ubiquity is entitled to its costs on appeal, contingent on compliance with Arizona Rule of Civil Appellate Procedure 21.[2]



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[2]        North argues the lawyer who filed Ubiquity's answering brief lacked the authority to do so. We do not address that issue because it is not relevant to the merits of North's appeal of the summary judgment.